875 F.2d 316
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jay David DIXON, Jr., Defendant-Appellant.
 No. 88-5633.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 10, 1989.
Decided May 12, 1989.
 
 Myron Tayloe Hill, Jr., for appellant.
 Dale Jeffrey Stone, Special Assistant U.S. Attorney, Office of the Staff Judge Advocate for appellee.
 Before K.K. HALL, MURNAGHAN, and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Jay David Dixon, Jr. appeals from the judgment of the district court affirming the magistrate's decision entered after a bench trial finding him guilty of a misdemeanor violation of 18 U.S.C. Sec. 661. We affirm.
 
 
 2
 Dixon operates an automobile repair garage and junkyard in Jacksonville, North Carolina. In April 1987, Foster Hill, a staff sergeant in the United States Marine Corps stationed at nearby Camp Lejeune, arranged with Dixon's father (who assisted at the garage) to repair the master brake cylinder in his 1980 Saab GLE automobile for $45.00. Dixon, however, was unable to obtain a repair kit, and, after two or three weeks had passed, he telephoned Hill's wife (Hill was then engaged in field training) and told her that it would cost $203.00 to replace the master cylinder. Mrs. Hill agreed to that price. After the automobile was repaired, Dixon kept it at his home, and evidence indicated it was driven 492 miles while in Dixon's custody.
 
 
 3
 After Hill returned from training, he went to the garage and paid the $203.00 repair charge but was unable to pay a $165.00 storage fee that Dixon claimed had accrued at the rate of $5.00 per day. After unsuccessfully seeking an unsecured loan, Hill persuaded Dixon's wife to permit him to take the automobile to use as collateral. Even so, Hill was unable to obtain a loan immediately and drove the car back to his residence on Camp Lejeune. Dixon, some three weeks later, not having been paid his storage bill and, mistakenly believing he had a mechanics' lien on the car, drove his tow truck to the military base, searched for the car, found it, and towed it back to his garage--leaving his business card in the screen door of the Hill residence. The automobile contained a cassette player, four speakers, an equalizer, a camera, a pellet gun, a holster, a box of hand tools, a hose, a basketball, a Marine Corps hat, and a pair of shoes, all of the value of less than $100.00. Dixon removed the cassette player from the car and kept it for safekeeping in his office.
 
 
 4
 Hill and a fellow marine visited Dixon's garage shortly after the car was towed and requested access to it in order to retrieve the personal property. Dixon refused and defended his decision by arming himself with a handgun. In late August 1987, a special agent of Naval Investigative Service visited the garage and requested that Dixon allow Hill access to the car. Dixon stated that he did not like Hill's attitude and did not want him anywhere near the car but allowed the agent to view the automobile. She noted that it contained some of the property that Hill had listed as being in it when it was taken. Dixon later filed a lien on the Saab with the intention of selling it.
 
 
 5
 In November 1987, the government filed a criminal information charging Dixon with theft of the contents of the car but not theft of the car itself. Section 661 of Title 18 of the United States Code on which the criminal information was based, provides in part:
 
 
 6
 Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished as follows:
 
 
 7
 If the property taken is of a value exceeding $100, or is taken from the person of another, by a fine of not more than $5,000, or imprisonment for not more than five years, or both; in all other cases, by a fine of not more than $1,000 or by imprisonment not more than one year, or both.
 
 
 8
 The magistrate, after a bench trial, found Dixon guilty of the misdemeanor violation, sentenced him to a suspended term of one year, fined him $350.00, and placed him on probation for a period of three years. In addition, he required Dixon to cancel the mechanics' lien, to return the automobile and personal property to Hill, and to reimburse Hill for the 492 miles that the automobile had been driven while in Dixon's possession. Dixon, on appeal, contends that he was unaware that the automobile contained personal property and that he had a good-faith belief that he had a mechanics' lien which gave him the right to take possession of the car.
 
 
 9
 The district court, after reviewing the transcript of the trial before the magistrate, stated:
 
 
 10
 That assorted items of personal property may be present inside an automobile should come as no surprise to anyone. When defendant towed the Saab from the Marine Base, he was, or should have been, aware that his actions would deprive Hill of certain ownership rights ... to everything which happened to be contained therein.
 
 
 11
 Viewing the evidence in the light most favorable to the government, United States v. Jones, 735 F.2d 785, 791 (4th Cir.), cert. denied, 469 U.S. 918 (1984), the evidence was certainly sufficient to support that conclusion. Dixon does not dispute that he saw and removed the stereo from the car, and the Naval Investigative Service Agent saw some of the personal property items in the Saab.
 
 
 12
 Likewise, we find no merit to Dixon's argument that his conviction should be reversed because he acted in the good-faith belief that he had a mechanics' lien and that that gave him legal right to take possession of the automobile. In the first place, the information did not charge him with stealing the automobile and Dixon makes no claim to a right to take possession of the other personal property. Moreover, a mistake of law is only a defense if it negates the existence of an essential mental state. See W. LaFave & A. Scott, Criminal Law Sec. 47 (1972). Even if the law was as Dixon believed it to be, i.e., that he still had a mechanics' lien despite having released the car to its owner, but see N.C.Gen.Stat. Sec. 44A-3, he would still not have had the right to take the car without legal process. His mistake of law does not negate section 661's specific intent requirement that he intended to unlawfully deprive the owner, even temporarily, of the rights of ownership.
 
 
 13
 In view of the above, the judgment of the district court is affirmed.
 
 
 14
 AFFIRMED.